Just, Demandante y Apelado, *v.* Just et al., Demandados y · Apelantes.

Apelación procedente de la Corte de Distrito de San Juan, Sección Primera, en pleito sobre nulidad de matrimonio (moción de reconsideración).

No. 2503.—Resuelto en julio 16, 1923.

Nulidad de Matrimonio—Impotencia—Causa de Acción.—En reconsideración de la sentencia dictada por el Tribunal Supremo en este caso el 8 de julio, 1922, 30 D. P. R. 755, se resolvió que el artículo 131 del Código Civil no da derecho a particulares para anular un matrimonio por impotencia del esposo y se pregunta si este derecho no corresponde exclusivamente a la esposa. Se resolvió, además, que un hijo natural bajo tal artículo no tiene interés bastante después de muerto su padre para anular tal matrimonio por dicha causa de impotencia, suponiendo que el padre lo hubiere tenido en vida.

Los hechos están expresados en la opinión.
Abogado· de los apelantes: *Sr. Juan de Guzmán Benítez.*
Abogado del apelado: *Sr. J. B. Soto.*

El Juez Asociado Sr. Wolf, emitió la opinión del tribunal.

En la anterior opinión emitida en este caso, 30 D. P. R. 755, dijimos que entendíamos el artículo 179 del Código Civil en el sentido de que confiere únicamente a la esposa un derecho a anular un matrimonio por causa de impotencia de su alegado esposo si quería hacerlo y era *sui juris.* Insiste el apelado en que no puede darse tal interpretación al artículo 179 del Código Civil, toda vez que el derecho se confiere indistintamente a todas las personas que en dicho artículo se mencionan. En nuestra anterior opinión se hizo referencia a la jurisprudencia de Francia y Louisiana. Insiste el abogado en que tanto en Francia como. en Loui-

siana, el derecho a una acción de nulidad por el funda-
mento de impotencia está limitado expresamente.

Este pleito fué establecido en virtud de la teoría de que
aquí el esposo no sólo era impotente, sino de insuficiente
capacidad mental. Una mujer que se casa con un hombre
de capacidad mental insuficiente, teniendo conocimiento del
hecho, es culpable de un fraude. El matrimonio es nulo *ab
initio* y no hay medio de darle validez. Tanto en España
como en Inglaterra y en los Estados Unidos el origen de
las reglas y leyes referentes al matrimonio y al divorcio se
encontraba en la Iglesia. Una ojeada a la historia del ma-
trimonio en Inglaterra y en los Estados Unidos revela que
el derecho a solicitar la nulidad del matrimonio por el fun-
damento de impotencia generalmente pertenecía a las par-
tes si no a la parte perjudicada solamente, debido en cierto
modo a su origen en la Iglesia. Notas al caso de *State* v.
*Yoder* y *Bernett* v. *Bernett,* L. R. A. 1916 C.

Asimismo nos atrevemos a afirmar que en los Estados
Unidos como en España un contrato matrimonial en el cual
uno de los esposos era impotente, era anulable únicamente
y no nulo *ab initio.*

Con éstos antecedentes, en el año 1902 la Legislatura
aprobó el Código Civil de Puerto Rico, cuyo artículo 129,
prescribe lo siguiente:

"Artículo 129.—El matrimonio es una institución civil que pro-
cede de un contrato civil en virtud del cual un hombre y una mu-
jer se obligan mutuamente a ser esposo y esposa, y a cumplir el
uno para con el otro los deberes que la ley les impone. Será válido
solamente cuando se celebre y solemnice con arreglo a las prescrip-
ciones de aquélla, y sólo podrá disolverse antes de la muerte de
cualquiera de los dos cónyuges en los casos expresamente previstos
en este Código."

Creemos que la mera cita de este artículo es bastante
para probar que la legislatura tuvo la intención de que la
institución del matrimonio debía quedar sujeta a las mis-

mas reglas que regulan los contratos en general, a menos que hubiera algo peculiar en la relación matrimonial que la hiciera nula *ab initio*.

El artículo 179 del Código Civil prescribe lo siguiente:

"Artículo 179.—La acción para pedir la nulidad del matrimonio corresponde a los conyuges, al fiscal y a cualesquiera otras personas que tengan interés en dicha nulidad."

Surge entonces la cuestión de si un hijo natural tiene un derecho de acción o interés en anular el matrimonio de su padre.

El artículo 130 del Código Civil prescribe lo siguiente:

Artículo 130.—Los requisitos necesarios para contraer matrimonio son:

"1.  Capacidad legal de los contratantes;

"2.  Consentimiento de las partes contratantes;

"3.  Autorización y celebración de un contrato matrimonial mediante las formas y solemnidades prescritas por la ley."

Sigue entonces en el Código una llamada "Sección Primera", titulada "Capacidad" en la que están comprendidos los artículos 131 al 135 inclusive del Código Civil. En estos artículos se trata de ambos, la capacidad y el consentimiento, y no se diferencian claramente, de modo que la "capacidad legal" del artículo 130, no puede igualarse a la "capacidad" a que se refiere la "Sección Primera." Sostiene la apelante con considerable apariencia de razón, que el amplio derecho para pedir la nulidad conferido por el artículo 179, debe tomarse en relación con el artículo 178 que precede inmediatamente, según el cual un matrimonio es nulo cuando no se ha contraído de acuerdo con los "requisitos exigidos por el Código." Alega ella que los requisitos "o condiciones" están especificados en el artículo 130 y que dicho amplio derecho para pedir la nulidad se refiere únicamente a ese artículo y por tanto a una falta de capacidad legal. Resultaría, por tanto, que la impoten-

cia no es una falta de capacidad legal, sino únicamente
una incapacidad especial, como la menor edad, u otras in-
capacidades tratadas en el artículo 131 y siguientes. La
capacidad legal debe, por tanto, significar la capacidad cuya
ausencia haría nulo el matrimonio *ab initio*. Los derechos
de acción para pedir la nulidad que estaban separados en
tiempo de España, quedaron agrupados en el artículo 179,
y esta es otra consideración que sostiene el punto de vista de
la apelante, la alegada esposa en este caso, pues parece impo-
sible que la legislatura hubiera agrupado todos los derechos
de acción en un artículo sin ninguna consideración de si el
contrato matrimonial contraído de tal modo· era absoluta-
mente nulo, o meramente anulable.

Nos inclinamos a resolver, sin otra consideración, que
un contrato de matrimonio que es meramente anulable
puede continuar o ser ratificado por los actos de las partes
con tal que sean *sui juris,* como se indica en nuestra opi-
nión original. La amplia facultad del artículo 179, al in-
cluir al fiscal, tiende a mostrar que la nulidad que ha de
solicitarse era de carácter público. Cuando dos personas
mayores de edad y de sano juicio no han contraído ningún
matrimonio anterior, y nada más ha ocurrido que anulase
el· matrimonio *ab· initio,* la continuación del matrimonio, de
ser anulable, es una cuestión entre las partes y como los
demás contratos, está sujeta a confirmación, ratificación o
algo semejante.

Volviendo a examinar los artículos 130 y siguientes se
verá que la incapacidad a que los mismos se refieren a ve-
ces hará nulo un matrimonio *ab initio* y otras meramente
anulable. Por preceptos específicos de los mismos las par-
tes en ciertos casos pueden ratificar el matrimonio o renun-
ciar sus derechos. Un menor que contrae matrimonio sin
el consentimiento de sus padres puede convalidar el matri-
monio al llegar a su mayor edad. El pupilo que contrae
matrimonio con su tutor antes de que se aprueben defini-

tivamente las cuentas de la tutela, etc., puede asimismo ratificar el matrimonio al llegar a su mayor edad. En el caso de *Ledesma* v. *Agrait,* 19 D. P. R. 566, resolvimos asimismo que las disposiciones del artículo 1362 permitian la ratificación de contratos en los que se observaban las formalidades externas del artículo 1228. Pero la consideración principal por virtud de la cual resolvemos este caso es que el demandante, apelado, no ha demostrado un interés tal que le dé derecho a una acción. En cuanto a esta parte de la discusión puede suponerse que el artículo 179 se refiere a cualquiera clase de incapacidad.

El demandante aquí únicamente podía derivar su derecho a establecer esta acción debido a la muerte de su padre. Antes de esa fecha él sólo tenía un interés en expectativa, que no es un interés suficiente, como indicamos en el caso de *El Pueblo* v. *Alcaide,* 29 D. P. R. 184.

Durante la vida de su padre, suponiéndole de sano juicio, el derecho a anular el matrimonio, si existió en absoluto, pertenecía al padre del demandante, que reunió en si todos los derechos universales, los cuales por la ley civil se trasmiten a un heredero. Creemos que es aparente que el artículo 179 se refiere a un interés que existe al celebrarse el matrimonio, o por lo menos, cuando se descubre el alegado motivo de nulidad. Es un interés que debe existir al celebrarse el matrimonio, aunque la causa de acción pueda surgir luego al descubrirse el defecto. Las partes en un contrato anulable que trae por consecuencia un matrimonio son las únicas, excluyendo al fiscal, que tienen un derecho existente en anular el matrimonio.

No habiendo el causante ejercitado el derecho de nulidad, si alguno tenía, este derecho no era una de las causas de acción que se traspasaba a los herederos. Era personal en el causante.

Hemos dicho que el fiscal quizás debe ser excluído pero

dudamos fuertemente si la intención de la legislatura fué
autorizar al fiscal para anular un matrimonio celebrado en-
tre personas *sui juris* cuando ese matrimonio es única-
mente anulable, a menos que el gobierno tuviera algún ver-
dadero interés en anular el matrimonio.

Además, dudamos seriamente, si es que no resolvemos,
que es únicamente la esposa la que puede establecer una
acción en contra de su marido por el fundamento de im-
potencia. Esta es la regla general en los Estados Unidos
y no se nos ha citado ningún caso en contrario.

Otras consideraciones conducen al mismo resultado ge-
neral de que la legislatura no tuvo la intención de que un
matrimonio anulable, como el que ahora consideramos, de-
bía de ser anulado a solicitud de un heredero, directo o cola-
teral. Las actuales leyes estatutorias de Puerto Rico no
disponen absolutamente nada sobre los efectos civiles de un
matrimonio contraído de buena fe. El artículo 69 del Có-
digo Civil español sí lo hacía. Ese artículo ha sido supri-
mido. Los hijos concebidos después de celebrado un ma-
trimonio anulable podrían llegar entonces a convertirse no
sólo en ilegítimos; sino sin derechos civiles. Nada se pres-
cribe con respecto a su condición legal. Si dos personas
que viven juntas por años como marido y mujer deseaban
legitimar su prole y uno de los esposos era impotente, tal
legitimación no podía tener lugar existiendo la oposición
por un heredero. Semejantes resultados no podían estar
en la mente de la legislatura y es el deber de la corte dar
aquella interpetación a nuestros estatutos que no conduzca
a estos u otros supuestos absurdos. *Holy Trinity Church*
v. *United States,* 143 U. S. 457.

Como el caso ha de devolverse para la celebración de un
nuevo juicio es innecesario resolver si el demandante probó
debidamente que él era el hijo del causante, pero la cues-
tión puede ser presentada de nuevo.

Por estas razones dictaremos otra vez la sentencia que anteriormente dictamos y que ahora hemos reconsiderado.

*Revocada la sentencia apelada y ordenado un nuevo juicio.*

Jueces concurrentes: Sres. Presidente del Toro y Asociados Aldrey, Hutchison y Franco Soto.