**TEMPLETON v. JONES et al.**

No. 17607.   Opinion Filed Sept. 20, 1927.

(Syllabus.)

1. **Marriage—Conflicting Marriages—Presumption of Validity of Second Marriage—Effect on Burden of Proof.**

In the case of conflicting marriages of the same spouse, the presumption of validity operates in favor of the second marriage. Accordingly the burden of showing the validity of the first marriage is on the party asserting it, and even where this is established, it may be presumed in favor of the second marriage that at the time thereof the first marriage had been dissolved either by a decree of divorce or by the death of the former spouse, so as to cast the burden of adducing evidence to the contrary on the party attacking the second marriage.

2. **Same—Presumption of Divorce from First Spouse.**

Where the evidence is not sufficiently clear or satisfactory that a party to a second marriage had not obtained a divorce from the prior spouse, the trial court is justified in holding that the presumption of divorce from such prior spouse had not been overcome.

Error from District Court, Seminole County; George C. Crump, Judge.

Action by M. E. Templeton against Williams Jones et al. Judgment for defendants, and plaintiff brings error. Affirmed.

John W. Willmott, R. J. Roberts, and Joseph C. Looney, for plaintiff in error.

A. S. Norvell, for defendants in error.

LESTER, J. The parties appear in this court in the same relation as in the district court.

On February 28, 1925, M. E. Templeton brought an action against the defendants in which the plaintiff claimed to be the owner of an undivided interest in and to certain lands located in Seminole county, Okla.

The plaintiff in his first cause of action

asked that he be decreed to have said interest decreed him, as well as the possession thereof. In plaintiff's second cause of action he prayed that the title to said interest be quieted against the defendants.

Issues were joined by the filing of answers by the defendants. The defendants contended that they had been in possession of the land more than ten years and that an undivided one-half interest came from the deceased mother of one William Jones and the remaining one-half from a deed from the husband of the deceased mother of William Jones, and the defendants prayed that their title be quieted against the plaintiff.

Trial was had, resulting in judgment in favor of the defendants, from which judgment the plaintiff prosecutes this appeal.

At the time of the death of the mother of William Jones she was then living with Lilly Ripley, to whom she had been married. William Jones was her only child.

On the 26th day of October, 1916, William Jones procured from Lilly Ripley a warranty deed for an undivided one-half interest to the land involved in this case. The deed recited that the same was executed in consideration of the sum of $300.

On the 9th day of June, 1924, for and in consideration of $100, one Robert Rabbit executed a warranty deed unto M. E. Templeton, which deed described the real estate herein involved, consisting of 80 acres of land.

The sole question to be determined in this cause is whether Robert Rabbit at the time he executed said deed to Templeton had inherited any interest in said land.

It is contended by the plaintiff that at the time Lucinda Ripley died Robert Rabbit was her lawful husband.

A large number of witnesses were introduced at the hearing in said cause, among them being Robert Rabbit. The following is a part of Robert Babbit's testimony (C.-M.) 170):

"Q. Who was your first wife? A. Lucinda was the first wife. Q. Who was the second wife? A. Mollie Anna. Q. All right, now you say you have been married twice, is that right? A. Yes, sir. Q. All right, then the first woman you lived with was Mary Jane? A. She had a man at that time. Q. The next woman you lived with was Nelly Tulsa, wasn't it? A. Yes, sir. Q. The next one that you lived with was Winey Fixico, wasn't it? A. Yes, sir. Q. The next one you lived with was Lucinda, wasn't it? A. I was just fooling around with these other women, but Lucinda was my wife. I cohabited with these other three women not regarding any of them as my wife, but my real wife was Lucinda Fixico. Q. She was the fourth woman with whom you lived? A. Yes, sir. Q. Now, who did you live with next after you and Lucinda busted up? A. Lillie Sumka. Q. You got a marriage license and were married and she died? A. Yes, sir. Q. And after she died you came in and claimed a portion of her property as her husband? A. I did. Q. And you gave a deed on her land and they paid you for it? * * * Q. The next one and the last one was Mollie Anna, wasn't it? A. Yes, sir."

Among the findings of the court is the following:

"The court further finds that Lucinda Fixico and Robert Rabbit were married under the Indian customs on or before the year 1906 or 1907, and that they lived together as husband and wife five years, and that there was a separation after statehood.

"The court further finds that the presumption of law is that when Lucinda Fixico and Robert Rabbit married again that they had been divorced and the court finds that the presumption is so strong that they had been divorced that it overcomes any other presumption.

"The court further finds: First. Robert Rabbit married Mary Jane. Second. That Robert Rabbit married Nelly Tulsa. Third. That Robert Rabbit married Winey Fixico.

"And the court further finds that the presumption of a divorce was obtained upon the consummation of these marriages.

"And the court further finds that after Robert Rabbit married Winey Fixico that he then married Lucinda Fixico. After he married Lucinda Fixico he married Lillie Sumka, and that at the time Robert married Lillie Sumka he married her according to the laws in force in Oklahoma at that time.

"That after he married her he married Mollie Anna, and that Robert Rabbit and Lillie Sumka were married by license, issued by the court clerk at Wewoka, Okla."

An examination of the record shows that Lilly Ripley and Lucinda Ripley were married on the 13th day of August, 1913, at Seminole, Seminole county, Okla.; that the same was a ceremonial marriage, the license having been issued by the county court clerk of said county on the 8th day of August, 1913, and the return thereon being made and recorded on the 14th day of August, 1913. It is further shown by the record that Robert Rabbit obtained a marriage license from the clerk of the county court of Seminole county on the 5th day of March, 1914, and return was made on the 6th day of March, 1914, showing that one J. F. West, minister of the Missionary Baptist church, joined in marriage said Robert Rabbit and Lillie Sumka. Thus it is clear that after Robert and Lucinda separated each of them remarried according to the laws of the state of Oklahoma.

The court upon the production of this evidence found that the presumption of divorce as to Lucinda Ripley and Robert Rabbit was so great that it had not been overcome by evidence.

38 Corpus Juris 1328, sec. 104, par. 4, states:

"In the case of conflicting marriages of the same spouse, the presumption of validity operates in favor of the second marriage. Accordingly the burden of showing the validity of the first marriage is on the party asserting it, and even where this is established, it may be presumed in favor of the second marriage that at the time thereof the first marriage had been dissolved either by a decree of divorce or by the death of the former spouse, so as to cast the burden of adducing evidence to the contrary on the party attacking the second marriage."

This doctrine is almost universally supported by the authorities. In the case of Coachman v. Sims et al., 36 Okla. 536, 129 Pac. 849, the court said:

"The only question, therefore, which is not elementary is whether or not the mere fact that the plaintiff's third wife was living at the time of his marriage to his fifth wife is sufficient proof that the fifth marriage was in its inception adulterous and bigamous. It will be observed that the evidence is entirely silent as to whether the third wife had been divorced, and whether there had been a separation according to the laws and usages of the Creek Nation. It will also be observed that between the third and the fifth marriage there had been a fourth, and that the fourth wife was dead at the time of the fifth. Under the facts of the case, we are satisfied that, in order to uphold the validity of this marriage in the absence of an affirmative showing that there had been no lawful separation, the presump-

tion will be that a divorce had been secured. Marriage should not be destroyed on presumption. The law is astute to preserve the sanctity of the marriage relation, the legitimacy of children, and stability of descent and distribution, and therefore presumes innocence and virtue, in the absence of proof. The wisdom of this presumption is rendered apparent by the facts in this case. This rule is well established by the authorities. Alabama & Vicksburg Railway Co. v. Beardsley, 79 Miss. 417, 30 South. 660, 89 Am. St. Rep. 660; Schmisseur v. Beatrie, 147 Ill. 210, 35 N. E. 525; Potter v. Clapp, 203 Ill. 592, 68 N. E. 81, 96 Am. St. Rep. 322; Erwin v. English, 61 Conn. 502, 23 Atl. 753; Wenning v. Teeple, 144 Ind. 189, 41 N. E. 600; Hunter v. Hunter, 111 Cal. 261, 43 Pac. 756, 31 L. R. A. 411, 52 Am. St. Rep. 180; Banks v. State, 96 Ala. 78, 11 South. 404; Leach v. Hall, 95 Iowa, 611, 64 N. W. 790; In re Rash's Estate, 21 Mont. 170, 53 Pac. 312, 69 Am. St. Rep. 649."

We have read all the evidence introduced in this case, and we clearly think the court was fully justified in holding under the evidence that the plaintiff had failed to overcome the presumption of law that at the time Lucinda entered into marriage with Lilly Ripley she had obtained a divorce from Robert Rabbit.

Robert Rabbit occupies a very censurable position in this case. It is shown by the record that after his separation from Lucinda Ripley and while Lucinda was still alive he entered into two marriages; that he claimed the estate of one of these deceased wives from one of these latter marriages; that he allowed ten years to pass before asserting any interest in the estate of Lucinda Ripley.

Robert Rabbit, while he insists that neither he nor Lucinda had procured a divorce from the other, however, since his separation from Lucinda, has twice entered into a marriage relation with other women.

Prior to the time that Lucinda died, the record shows that Lucinda was absent from Seminole county for several months. She may or may not have procured a divorce from Robert Rabbit while absent from said county; however, when she entered into a marriage relation with Lilly Ripley, the presumption then attached that she had procured a divorce from Robert Rabbit, and this presumption was not overcome by the evidence to the satisfaction of the trial court.

In our judgment little weight should be given to the testimony of Robert Rabbit.

It was incumbent upon the plaintiff to recover upon the strength of his title. The burden of proof being, therefore, placed upon him to show no divorce had been granted Lucinda, and plaintiff having failed to establish such fact, the trial court was justified in rendering judgment against plaintiff.

Judgment is affirmed.

BRANSON, C. J., MASON, V. C. J., and HARRISON, PHELPS, HUNT, CLARK, RILEY, and HEFNER, JJ., concur.

Note.—See under (1) 38 C. J. pp. 1328, 1329 1330, §104; 18 R. C. L. 417. (2) 38 C. J. p. 1343, §115; 18 R. C. L. 419.