Petra Cruz Quiñones y Virginia López Maysonet, ésta en representación de sus hijos menores Rogelio, Osvaldo y Ángel Cruz López, demandantes y apelados, *v.* Vicenta, Irene, Julia, Justino, Basilio, Gloria Eugenia y Ángel Rafael Ramos, conocidos como Vicente, Irene, Julia, Justino, Basilio, Gloria Eugenia y Ángel Rafael Cruz Ramos; María Martínez e Irma Doñes, demandados y apelantes.

Núm. 9718.—*Sometido:* Diciembre 21, 1948. *Resuelto:* Diciembre 20, 1949.

*Faustino R. Aponte,* abogado de los apelantes; *Benjamín Ortiz y Álvaro Ortiz,* abogados de los apelados.

El Juez Asociado Señor Negrón Fernández emitió la opinión del tribunal.

El 17 de octubre de 1892, Francisco P. Cruz, de 19 años, y Gregoria Quiñones, de 14, contrajeron matrimonio canónico en la isla de Vieques. De ese matrimonio nacieron dos hijos: Petra, el 14 de enero de 1895, y Anastacio, el 12 de julio de 1896. Anastacio falleció el 8 de octubre de 1927, estando casado con Virginia López, dejando tres hijos nombrados Osvaldo, Edmundo Aníbal y Rogelio.

Gregoria Quiñones desapareció de Vieques cerca de cuatro años después de su matrimonio, en fecha no precisada, y nunca más se volvió a saber de ella.

Haciendo constar que su estado civil era *viudo*, Francisco Cruz contrajo matrimonio civil con Mariana Ramos en el pueblo de Río Grande el 27 de octubre de 1900. De ese segundo matrimonio nacieron ocho hijos: Guillermina, Vicenta, Irene, Julia, Justino, Basilio, Eugenia y Ángel Rafael, y se adquirieron bienes.

Mariana Ramos falleció en el pueblo de Fajardo el 8 de agosto de 1928. El 15 de junio de 1929, la Corte de Distrito de Humacao, en procedimiento de declaratoria de herederos instado por Francisco Cruz, declaró a sus ocho hijos arriba nombrados, únicos y universales herederos de Mariana Ramos, reconociendo a Cruz la cuota usufructuaria determinada por la ley. El 30 de junio de 1936, la Corte de Distrito de Humacao, en procedimiento instado por Francisco Cruz y Juan Aromí, éste como defensor judicial de tres de los ocho herederos de Mariana Ramos—menores de edad—impartió su aprobación a la escritura particional de las operaciones divisorias con motivo del fallecimiento de dicha causante. Por dichas operaciones particionales se adjudicó a los ocho herederos de Mariana Ramos, previa renuncia por Francisco Cruz a favor de ellos de su cuota usufructuaria, la mitad de los bienes que, en la liquidación de la sociedad de ganaciales, correspondieron a la causante. Tanto la declaratoria de

herederos como la escritura de operaciones particionales fueron inscritas en el registro de la propiedad.

Francisco Cruz falleció el 16 de marzo de 1939, estando casado en terceras nupcias con María Martínez, con quien contrajo matrimonio en Luquillo el 16 de agosto de 1934.

El 23 de marzo de 1945, Petra Cruz Quiñones, hija de Francisco Cruz y Gregoria Quiñones, y los hijos de su hermano fallecido, Anastacio, instaron, como herederos de Cruz, acción civil para anular el segundo matrimonio de éste— contraído con Mariana Ramos el 27 de octubre de 1900—así como el tercero—contraído con María Martínez el 16 de agosto de 1934—y, en consecuencia, anular las inscripciones hechas en el registro civil de los ocho hijos habidos durante dicho segundo matrimonio, inscritos como legítimos; los procedimientos judiciales llevados a cabo en la Corte de Distrito de Humacao, así como las inscripciones verificadas en el registro de la propiedad; obtener la reivindicación de los bienes adjudicados a dichos ocho hijos al fallecer Mariana Ramos en el año 1928 por su participación ganancial en los bienes adquiridos durante el referido matrimonio, y obtener daños y perjuicios.

Como causa de la nulidad del segundo y tercer matrimonios se alegó que a la fecha en que éstos fueron celebrados, Cruz estaba aún casado con Gregoria Quiñones, sin que hubiere sido roto ni disuelto el vínculo matrimonial existente entre ellos.

En su contestación los demandados admitieron algunos de los hechos alegados en la demanda y negaron otros, interponiendo, además, varias defensas especiales. Luego de un juicio en sus méritos la corte inferior dictó sentencia declarando con lugar la demanda en su totalidad. En consecuencia, declaró nulo el matrimonio contraído por Francisco P. Cruz con Mariana Ramos el 27 de octubre de 1900; así como el contraído con María Martínez el 16 de agosto de 1934; declaró que los ocho hijos habidos en el matrimonio con Mariana Ramos eran hijos adulterinos, pero con derecho a usar

el apellido de sus padres; que la escritura de división y adjudicación de bienes, así como todas las inscripciones habidas en el registro de la propiedad a virtud de dichas operaciones particionales eran igualmente nulas; que las únicas personas con derecho a los bienes relacionados en la demanda lo eran la demandante Petra Cruz Quiñones y los hijos de Anastacio Cruz Quiñones, fallecido, nombrados Rogelio, Osvaldo y Ángel[1] Cruz López, por ser dichas personas los únicos y universales herederos de Francisco P. Cruz, condenando a los demandados a pagar a los demandantes, por concepto de daños y perjuicios, la suma de $1,000 por la posesión y disfrute de los bienes dejados a la muerte de Francisco P. Cruz, más las costas y $300 para honorarios de abogado.

Siete son los errores que los demandados, en apelación, señalan en su alegato. A pesar de haber planteado en la corte inferior, entre otras, la defensa especial de que los demandantes carecían de capacidad legal para demandar, la cual les fué resuelta adversamente, dicha defensa ha sido abandonada en apelación y no habremos de considerarla.

■■ Aunque el séptimo en el orden de señalamiento, daremos atención en primer lugar al error por el que se sostiene que la causa de acción estaba prescrita.

El Código Civil Español, vigente tanto a la fecha del matrimonio de Francisco Cruz con Gregoria Quiñones—1892— como a la fecha de su matrimonio con Mariana Ramos— 1900—disponía, en su artículo 83, que no podían contraer matrimonio, entre otros "Los que se hallen ligados con vínculo matrimonial"; y en su artículo 101, que eran nulos, entre otros, "Los matrimonios celebrados entre las personas a quienes se refieren los artículos 83 y 84, salvo los casos de dispensa". La incapacidad que sirve de base a la causa de acción de nulidad en el presente caso—motivada por vínculo matrimonial anterior—se considera como una incapacidad de

---

[1] Aun cuando la sentencia se refiere a Rogelio, Osvaldo y Ángel Cruz López, la prueba demostró que los nombres de los tres hijos de Anastacio Cruz Quiñones son Rogelio, Osvaldo y Edmundo Aníbal.

carácter absoluto. 1 Manresa, Comentarios al Código Civil, ed. 1923, págs. 439 y 446; 2 Scaevola, Código Civil, pág. 288. La misma se ejercita bajo la teoría de que el segundo matrimonio es nulo *ab initio,* o sea inexistente, y no meramente anulable. Siendo ello así, la acción para pedir la nulidad del mismo no prescribe.

En *Just* v. *Just et al.,* 32 D.P.R. 248, este Tribunal expuso la diferencia que existe entre un matrimonio nulo *ab initio* y uno solamente anulable. Igual consideración se dió a tales conceptos en el de *Cintrón* v. *Román,* 36 D.P.R. 484 y en el de *Rodríguez* v. *Díaz,* 65 D.P.R. 285. Aun cuando en ninguno de dichos casos se trataba de un matrimonio impugnado por razón de existir impedimento derivado de matrimonio anterior, los principios en ellos enunciados sirven de base para llegar a la conclusión de que cuando se ha contraído un matrimonio y éste no se ha disuelto en la fecha en que se contrae el segundo, la incapacidad de los cónyuges del primer matrimonio es absoluta y el segundo matrimonio es nulo *ab initio,* e inexistente. I Manresa, obra y págs. citadas; 2 Scaevola, Código Civil, págs. 288 y 293. Siendo, por tanto, nulo *ab initio* e inexistente el matrimonio contraído bajo la incapacidad de vínculo anterior, la defensa de prescripción carece de mérito ya que, al igual que en el caso de cualquier otro contrato inexistente, no hay punto de partida para contar término alguno de prescripción. *González Rodríguez* v. *Fumero,* 38 D.P.R. 556; *Costas* v. *G. Llinás & Co.,* 66 D.P.R. 730; *Gastambide et al* v. *Sucesión Ortiz Pericchi,* ante, pág. 412; *Succession of Gabisso* (1907), 119 La. 704, 44 So. 438.

El segundo de los errores señalados es al efecto de que la sentencia es contraria a derecho y a la prueba.

Estamos frente a una acción donde se pide la nulidad de un matrimonio celebrado bajo el imperio del Código Civil Español—el de Francisco Cruz con Mariana Ramos, en 1900 —y de un matrimonio celebrado durante la vigencia de nuestro Código Civil—el de Francisco Cruz con María Martínez, en 1934.

Ya hemos visto que el artículo 101 del Código Civil Español, entre otros, declaraba nulos los matrimonios de personas que al contraerlos, se hallaban ligadas con vínculo matrimonial (art. 83, inciso 5, C.C.E.). El artículo 51 del propio Código disponía: "No producirá efectos civiles el matrimonio canónico o civil cuando cualquiera de los cónyuges estuviese ya casado legítimamente". Por otro lado, el artículo 69 del mismo disponía, a su vez: "El matrimonio contraído de buena fe produce efectos civiles, aunque sea declarado nulo"; pasando seguidamente dicho artículo a proveer: "Si ha intervenido buena fe de parte de uno solo de los cónyuges, surte únicamente efectos civiles respecto de él y de los hijos"; "La buena fe se presume, si no consta lo contrario" y, finalmente: "Si hubiera intervenido mala fe por parte de ambos cónyuges, el matrimonio sólo surtirá efectos civiles respecto de los hijos".

Comentando el artículo 51 del Código Civil Español dice Manresa:

"Condenadas en absoluto como contrarias en la esencia del matrimonio la poligamia y la poliandria, y constituyendo el *ligamen* un impedimento dirimente según el derecho canónico, se deduce de una manera obvia la nulidad del matrimonio que contraiga una persona que se halle unida a otra distinta por vínculo no disuelto legalmente, con arreglo también al núm. 5º del artículo 83 de este Código y al 486 del penal que castiga la bigamia. Carece el matrimonio contraído en estas condiciones de las necesarias para darle validez y eficacia, y no puede surtir efectos civiles según el texto de este artículo.

"Preciso es advertir que, según el artículo 69, los matrimonios sobre los que pesa la declaración de nulos, producen efectos civiles, siempre que se contraigan de buena fe, y aunque la hubiese habido mala por parte de ambos contrayentes, surten aquellos efectos respecto a los hijos.

"No existe contradicción entre los dos textos, puesto que el primero expresa la regla general, y el segundo establece la excepción de que habrán de valerse el contrayente de buena fe y los hijos para lograr que se les reconozcan los derechos compatibles con su situación anormal.

"Por tanto, cuando el matrimonio contraído de buena fe por una persona, se anula por resultar que el otro contrayente se hallaba legítimamente casado con anterioridad, no rige respecto a los hijos y al cónyuge inocente, el precepto del artículo 51, sino el 69 que es especialísimo, y expresamente dictado para el caso." 1 Manresa, Comentarios al Código Civil Español, ed. 1924, págs. 312 y 313.

Y comentando el artículo 69 del propio Código, dice lo siguiente:

"Los efectos civiles que el Código reconoce nacen en el instante en que se contrae matrimonio, no obstando para ello el que muy reciente a la primera fecha tenga uno de los cónyuges noticia de la prohibición legal o del impedimento dirimente, pues basta que la concurrencia de la buena fe sea coetánea al momento preciso de la celebración. La regla no tiene excepción alguna, y la ficción de derecho tiene en este caso raíces profundísimas en la consideración ya apuntada respecto a la concesión a los hijos del concepto de legitimidad.

"En la opinión pública dentro de las relaciones creadas por el trato social, en la comunicación diaria con amigos y deudos, el matrimonio ha existido hasta ser conocida (casi siempre por sus efectos) la decisión judicial declaratoria de nulidad. No es la primera vez que el hecho consumado solicita con éxito la iniciativa y la sanción del legislador.

"El concepto de legitimidad alcanzará seguramente a los hijos que legitime el matrimonio, puesto que los efectos civiles del mismo arrancan de su celebración, y también gozarán de ella los que nazcan dentro de los 301 días siguientes a la separación legal de los cónyuges, teniendo base esta afirmación en el artículo 69 que comentamos; y en el núm. 2º del artículo 45." 1 Manresa, Comentarios al Código Civil Español, ed. 1924, págs. 378 y 379.

Nada hay en el récord ante nos que pueda destruir, respecto a ninguno de los cónyuges—Francisco Cruz o Mariana Ramos—la presunción de buena fe con que la ley les amparaba al contraer matrimonio en el año 1900.(2)

(2) Aunque bajo tales circunstancias era innecesaria prueba afirmativa de los demandados tendente a establecer la buena fe, hubo, no obstante, ofrecimiento por su parte, de prueba—que no fué admitida—que tendía a demostrar que Cruz, antes de su matrimonio con Mariana Ramos, había hecho declaraciones de que Gregoria Quiñones, su primera esposa, había muerto porque "le apareció una carta de luto a él".

De otra parte, el artículo 72 del Código Civil Español disponía que "La ejecutoria de nulidad producirá, respecto de los bienes del matrimonio, *los mismos efectos que la disolución por muerte;* pero el cónyuge que hubiera obrado de mala fe no tendrá derecho a los gananciales". (Bastardillas nuestras.) Comentando este artículo dice Manresa:

"Quedan establecidos los efectos de la nulidad del matrimonio respecto a los derechos que la ley reconoce a los contrayentes en sus respectivos casos; quedan atendidos también los deberes relativos a los hijos y determinado su destino; falta únicamente regular la forma de liquidación de una sociedad que muere.

" .   .   .   .   .   .   .   .   .   .   .

Firme ya la sentencia de nulidad, queda destruída la apariencia de legítimo que dió al matrimonio el acto de su celebración. Llegado el caso de cumplir la ejecutoria, las donaciones que tuvieron por causa el enlace, siguen la suerte que les correspondería en caso de disolución por muerte, con arreglo al artículo 72, con las modificaciones a que antes nos hemos referido, consignadas en el núm. 3º del artículo 73, relacionado con el 1.333, y sin perjuicio, en su caso, de lo dispuesto en el 1.440, lo que prueba que no quedan siempre sin efecto, o sea que, a pesar de tratarse de un matrimonio nulo, la ley no quiere llevar su rigor hasta el extremo de suponer que no llegó a existir, pues premia la buena fe, otorgando al que la tenga la consideración que da al cónyuge viudo. La dote es restituída juntamente con los bienes parafernales, cuando proceda la restitución de aquélla (véase el art. 1.365), pues el núm. 3º. del artículo 73, impone también aquí limitaciones, *y los gananciales, si los hubiere, se parten por mitad, si la buena fe existió en ambos contrayentes,*

Conforme al artículo 397 del Código de Enjuiciamiento Civil—artículo 35, Ley de Evidencia (art. 1870, C.E.C. de Cal.)—en su inciso 4 "el acto o declaración, verbal o escrita, de una persona que hubiere fallecido . . . con referencia al linaje, nacimiento, ascendencia, edad, matrimonio, *muerte* o parentesco, de cualquiera persona relacionada por sangre o matrimonio con dicha persona . . ." podrá presentarse en evidencia en cualquier juicio. (Bastardillas nuestras.) Dicha prueba, pues, era admisible, independientemente del peso que a la misma se diera. *In re Smith's Estate, 33 C.2d 279,* 201 P.2d 539; *In re Estate of Morgan,* 203 Cal. 569, 265 P. 241; *In re Estate of Friedman,* 178 Cal. 27, 172 P. 140.

El quinto de los errores señalados por los apelantes es con relación a la negativa de la corte inferior a admitir dicha prueba.

*pues si fué de uno solo, él los hace suyos."* (Bastardillas nuestras.) 1 Manresa, Comentarios al Código Civil Español, ed. 1924, págs. 381 y 382.

Aplicando, pues, a la situación de hechos en este caso, las disposiciones de ley vigentes a la fecha de la celebración del matrimonio de Francisco Cruz con Mariana Ramos, sería inevitable la conclusión de que aun en el supuesto de que la corte inferior, por la prueba aducida, hubiere estado justificada en declarar dicho matrimonio *nulo,* no estuvo justificada en negar efectos civiles a dicho matrimonio al resolver, como lo hizo, que los ocho hijos habidos durante el mismo eran adulterinos, y que la parte de los bienes que se adjudicaron a esos ocho hijos por herencia de la mitad ganancial de su madre Mariana Ramos([3]) pertenecían a los demandantes como herederos de Francisco Cruz.

Sin embargo, la prueba que tuvo ante sí la corte inferior para declarar nulos el segundo y tercer matrimonios de Francisco Cruz, no justifica sus conclusiones a ese efecto. Los demandantes, con la certificación del primer matrimonio de Cruz, establecieron el hecho de que dicho primer matrimonio se había celebrado, pero ninguna otra prueba ofrecieron que acreditara que el mismo subsistía a la fecha de celebración del segundo—1900—y del tercero—1934. Evidentemente descansaron, para probar la nulidad de éstos últimos, una vez acreditado el primer matrimonio, en la presunción de continuidad del mismo, según el artículo 102 de nuestra Ley de Evidencia, inciso 31([4]) y en la de continuidad de vida de la primera esposa. Pero en casos de esta naturaleza hace falta algo más. La regla unánime es al efecto de que

---

([3])La herencia de Francisco Cruz, fallecido en 1939, no fué objeto de reclamación en este pleito. Tan sólo la mitad que como ganancial le correspondía a su segunda esposa Mariana Ramos, y que fué, por herencia, a los demandados, es la que se reclama mediante la presente acción.

([4])El artículo 102, Ley de Evidencia (464, inciso 31, Código de Enjuiciamiento Civil, ed. 1933) establece: "Que una vez probada la existencia de una cosa continúa ésta todo el tiempo que ordinariamente duran las cosas de igual naturaleza." (Traducción del texto inglés, por proceder nuestra Ley de Evidencia de California.)

724

para obtener una declaración de nulidad de un matrimonio bajo la alegación de que cuando éste fué celebrado uno de los cónyuges estaba incapacitado para contraerlo por razón de previo vínculo, no sólo precisa que se establezca que el anterior matrimonio fué celebrado, si que también que dicho matrimonio, a la fecha de celebración del segundo, subsistía legalmente por no haber terminado por muerte del otro cónyuge o por sentencia de divorcio o nulidad.(5)  La razón para esta regla es una de orden público que establece una de las más sólidas presunciones a favor del matrimonio contraído subsiguientemente;(6) y por consiguiente, sobre la presunción relativa al estado de continuidad, prevalece la presunción de que ha existido un contrato legal de matrimonio cuando un hombre y una mujer se conducen como casados y que son inocentes del delito de bigamia.(7)  Siendo ello así,

(5)*Patterson* v. *Gaines et ux.* (1848), 47 U.S. 550, 12 L. ed. 553; *Moran* v. *Superior Court* (1940), 38 C.A.2d 328, 100 P.2d 1096; *In re Smith's Estate* 201 P.2d 539 (Calif., 1949); *Hamburgh* v. *Hys* (1937), 22 C.A.2d 508, 71 P.2d 301; *Estate of Newman* (1939), 34 C.A.2d 706, 94 P.2d 356; *Immel* v. *Dowd* (1935), 6 C.A.2d 145, 44 P.2d 373; *Estate of Chandler* (1931), 113 Cal. App. 630; *Everett* v. *Standard Acc. Ins. Co.* (1919), 45 Cal. App. 332, 187 P. 996; *Wilcox* v. *Wilcox* (1916), 171 Cal. 770, 155 P. 95; *Estate of Hughson* (1916), 173 Cal. 448; *In re Pusey's Estate* (1916), 173 Cal. 141, 159 P. 433; *Hale* v. *Hale* (1913), 40 Okl. 101, 135 P. 1143; *Chancey* v. *Whinnery* (1915), 47 Okl. 272, 147 P. 1036; *Brotherhood of Railroad Trainmen* v. *Merideth*, 225 S.W. 337 (Ark., 1920); *Estes* v. *Merrill*, 181 S.W. 136 (Ark., 1915); *McGaugh* v. *Mathis*, 198 S.W. 1147 (Ark., 1917); *Templeton* v. *Jones*, 259 P. 543 (Okla., 1927); *Kelsey* v. *Miller* (1928), 203 Cal. 61; *Erwin* v. *English*, 23 A. 753 (Conn., 1892); *Marsh* v. *Marsh* (1926), 79 Cal. App. 560; *Griggs* v. *Pullman Co.*, 40 S.W.2d 463 (Mo., 1931); Nelson, *Divorce and Annulment*. 2d ed., Vol. 3, p. 351; *Annotation*, 34 A.L.R. 464, y casos citados; *Annotation*, 77 A.L.R. 730, y casos citados; 35 Am. Jur., secs. 206, 217, *et seq.*, págs. 315, 323 *et seq.*; Cf. *Schmisseur* v. *Beatrice*, 35 N.E. 525 (Ill., 1893); *Ryder* v. *Ryder* (1934), 2 Cal. App. 2d 426, 37 P.2d 1069.

(6)*Doertch* v. *Folwell Engineering, Co.* (1930), 252 Mich. 76, 233 N.W. 211; *Marsh* v. *Marsh* (1926), 79 Cal. App. 560; *Griggs* v. *Pullman Co.*, 40 S.W. 2d 463 (Mo., 1931); *Maier* v. *Brock*, 120 S.W. 1167 (Mo., 1909).

(7)*Doertch* v. *Folwell Engineering Co.* (1930), 252 Mich. 76, 233 N.W. 211; *Walker* v. *Walker*, 117 So. 472 (Ala., 1928); *Sparks* v. *Ross*, 65 A. 977 (N.J., 1907); *Pittinger* v. *Pittinger* (1901), 28 Colo. 308, 64 P. 195; *Tompkins* v. *Commonwealth*, 77 S.W. 712 (Ky., 1903); *Lathan* v. *Lathan*, 1 S.W.2d 67 (Ark., 1928); *Templeton* v. *Jones*, 259 P. 543 (Okla., 1927); *Marsh* v. *Marsh* (1926), 79 Cal. App. 560. *Hunter* v. *Hunter* (1896), 111 Cal. 261, 43 P. 756; 26 *California Law Review* 270.

en el caso de autos la prueba de los demandantes debió acreditar suficientemente que el primer matrimonio de Francisco Cruz, a la fecha de celebración del segundo con Mariana Ramos, no había terminado por muerte, y que no había mediado sentencia de nulidad. Que no había terminado por muerte, porque como hemos visto la presunción de continuidad de vida cede, en casos de esta índole, a la más fuerte presunción de validez del segundo matrimonio. Que no había mediado sentencia de nulidad, porque aun cuando el Código Civil Español, en su artículo 52, reconocía como única causa de disolución del matrimonio la muerte de uno de los cónyuges, tal precepto partía de la realidad jurídica de que un matrimonio nulo no se disuelve y de que la sentencia de nulidad lo que hace es declarar que el mismo nunca ha existido. 2 Scaevola, Código Civil, pág. 111. Por lo tanto, para destruir la presunción de validez que acompañaba a dicho matrimonio, aun cuando el Código Civil Español sólo reconocía la muerte como única causa para su *disolución,* era necesario también acreditar que el mismo no se había declarado inexistente. En cuanto a la impugnación del tercer matrimonio de Francisco Cruz, celebrado durante la vigencia de nuestro Código Civil, era necesario, además, acreditar que tampoco el primer matrimonio había sido disuelto por sentencia de divorcio.([8])

No existiendo en la prueba de los demandantes base suficiente para declarar que el segundo matrimonio de Francisco Cruz—con Mariana Ramos en 1900—y el tercero—con María Martínez en 1934—son nulos, cometió error la corte inferior al así declararlos. *En consecuencia, la sentencia dictada por la Corte de Distrito de Humacao el 25 de febrero de 1947 en este caso será revocada y se dictará otra declarando la demanda sin lugar, con costas a los demandantes.*

([8])Si bien bajo el Código Civil Español, artículo 104, el divorcio sólo producía la suspensión de la vida común de los casados, en el nuestro, artículo 95, ed. 1930, se reconoce el divorcio como uno de los medios de disolución del vínculo matrimonial.