PARKHILL TRUCK COMPANY and Transport Indemnity Company, Petitioners,

v.

Marie A. ROW and the State Industrial Court, Respondents.

Opal Norine ROW, Petitioner,

v.

P. W. BARNES and Parkhill Truck Co., Transport Indemnity Co., Marie A. Row and State Industrial Court, Respondents.

Nos. 39238, 39252.

Supreme Court of Oklahoma.

April 16, 1963.

As Corrected June 3, 1963.

Rehearing Denied June 4, 1963.

Application for Leave to File Second Petition for Rehearing Denied July 2, 1963.

Donald Church, Tulsa, for petitioners Parkhill Truck Co. and Transport Indemnity Co.

Jack E. Naifeh, Tulsa, for petitioner Opal Norine Row.

Holly L. Anderson, Elliott Howe, Tulsa, and Mac Q. Williamson, Atty. Gen., for respondent Marie A. Row.

BERRY, Justice.

On September 29, 1958, James W. Row, hereafter referred to as "employee", was employed by Parkhill Truck Company, hereafter referred to as "respondent". On the mentioned date, employee sustained fatal bodily injuries in the course of his employment.

Marie A. Row, hereafter referred to as "claimant", and Opal N. Row, each claim to be the surviving spouse of employee and as such assert the right to death benefits provided for in 85 O.S.1961 § 22, sub-paragraph 7 of the Workmen's Compensation Act. The separate claims that they filed before the State Industrial Court were premised on said claim and assertion.

Following trial in the mentioned court, it was found that (a) employee was engaged in hazardous employment at the time he sustained fatal bodily injuries; that (b) the injuries and resulting death arose out of and in the course of employee's employment with respondent; that (c) claimant was employee's surviving spouse and as such entitled to the death benefit award provided for in the above cited section of the statute; that (d) Opal N. Row was not the surviving spouse of employee and accordingly was not entitled to such benefits. Findings "(a)" and "(b)" are not questioned.

From the mentioned order respondent and its insurance carrier have petitioned for review. Their case was here numbered 39,-238. Opal N. Row has also petitioned for review. Her case was here numbered 39,-252.

In No. 39,238 the respondents contend that assuming claimant was employee's surviving common-law wife, she is not entitled to the death benefit awarded below because she was not in fact a dependent of employee within the purview of 85 O.S.1961 § 3.1 at the time of his death. This contention is premised on the proposition that in December, 1957, claimant and employee separated; that in April, 1958, employee and Opal N. Row entered into a ceremonial marriage; that from date of separation to date of his death employee did not support claimant. This contention is countered by claimant. It is not contended that claimant and employee entered into a separation agreement.

Sec. 3.1, supra, reads thusly:

"In respect to death benefits under this Act, the following definitions shall apply:

"(1) The term 'Dependent' or 'Dependents,' as used in this Act, shall mean and include the heirs at law of the deceased, as defined by the Descent and Distribution Statutes of Oklahoma.

"(2) 'Compensation' means the money payable to the persons entitled thereto under this Act."

The evidence bearing upon respondents' contention can be summarized thusly:

Claimant and employee became acquainted the latter part of 1953. Following several social dates, employee, in November, 1953, began to stay at claimant's home. In January, 1954, he moved his personal effects to claimant's home and from that time until in December, 1957, employee and claimant lived together. In 1957 employee had a number of dates with Opal N. Row. Claimant testified that this was the cause of employee and her separating in December, 1957.

At time of separation, employee surrendered to claimant a life insurance policy in the amount of $500.00. Claimant was apparently referred to in the policy as claimant wife and as such named beneficiary thereof. At time of separation employee made a promise to claimant to send her money but failed to do so or otherwise support her. Following the separation claimant lived first with her mother and then with her daughter by a prior marriage who supported her.

In April, 1958, employee and Opal N. Row entered into a ceremonial marriage and thereafter lived together as husband and wife.

In support of their contentions respondents cite Capitol Steel and Iron Co. et al. v. Fuller et al, 206 Okl. 638, 245 P.2d 1134, where it is stated that "if the death of the employee had occurred prior to the 1950 Constitutional Amendment, an action for wrongful death could have been prosecuted under the provisions of 12 O.S.1941, Sec. 1053 for the benefit of 'the surviving spouse and children.' These persons, although having a cause of action would not have a right of action unless they suffered a pecuniary loss by reason of the death, in other words, were dependents." Also Jaggers v. Newton Barrett Drilling Co., Okl., 268 P.2d 285, and Fox-Vliet Wholesale Drug Company et al. v. Chase et al., Okl., 288 P. 2d 391, are cited. In the first paragraph of the syllabus to the last cited case it is stated that "In the Workmen's Compensation Act, the legislative expression that death benefits are payable 'to the dependents of the deceased employee as herein defined,' refers to persons who are heirs at law of the deceased as defined by the descent and distribution statutes and who are presently, *or in reasonable future expectancy,* relying on the said employee in whole or in part for necessary support and maintenance."

We note that language is used in Sinclair Oil & Gas Company v. State Industrial Commission et al., Okl., 338 P.2d 866, 871, which tends to sustain respondents' contention. However, in view of the fact that the conclusion reached therein was based on fact that the deceased employee had partially supported his surviving wife, we do not consider that such language represents controlling precedent. To our way of thinking, the thought expressed by said language cannot be reconciled with that used in the Jaggers case, supra, to the general effect that an heir at law is a dependent of a deceased employee within the purview of the Compensation Act if he has reasonable future expectancy of support from such employee.

The mentioned pronouncement of the Capitol Steel and Iron Co. case, supra, should be considered in connection with that portion of Chicago, R. I. & P. Ry. Co. v. Fontron Loan & Trust Co., 89 Okl. 87, 214 P. 172, to the effect that recovery on part of the widow and minor children for wrongful death of their ancestor under our wrongful death statutes, will lie notwithstanding such ancestor was not supporting his wife and minor children.

It appears that this is the first time that this Court has had occasion to consider the precise proposition presented by respondents. In making said statement we have not overlooked our decision in Sipes v. Sipes et al., Okl., 335 P.2d 640, where it was held that fact that deceased father had not paid award for child support, did not establish that the child was not his dependent within purview of Sec. 3.1, supra.

While the precise proposition before us has been passed upon in a number of other jurisdictions, there is a marked conflict in the conclusions reached. This is reflected by cases cited at p. 810 of annotated notes beginning at p. 686, 13 A.L.R., and context of 99 C.J.S. Workmen's Compensation § 140(1), p. 464. In the last mentioned section this is said:

" * * * Whether the wife was entitled to support from her husband ordinarily is the test of whether she is entitled to compensation under the statute for his death, and the right is not forfeited by reason of the fact that the husband neglected the wife or because she elected to support herself. It has been held that the workmen's compensation act does not recognize partial dependency where the deceased employee leaves a widow whom he was legally obligated to support at the time of injury or where the employee leaves a husband totally dependent on the employee's earnings."

By force of statute, 32 O.S.1961 § 3, a husband is under a mandatory duty to sup-

port his wife. For case law to said effect see State ex rel. Oklahoma Public Welfare Commission v. Simon, 203 Okla. 433, 222 P.2d 1027 and cited cases.

■ In view of the fact that employee was under a legal duty to support his wife, she had a "reasonable future expectancy" of support from him (See Fox-Vliet Wholesale Drug Co. case, supra) and, therefore, was employee's dependent within Sec. 3.1, supra. We add, it is settled law in this jurisdiction that the Compensation Act be liberally construed. To construe the Act in accordance with respondents' contention would not be in keeping with such rule of construction.

In No. 39,252, Opal N. Row contends that there is no competent evidence showing that claimant was the common-law wife of employee.

The fact that employee and Opal N. Row obtained a marriage license in April, 1958, and that the license shows that a minister of the gospel "joined in marriage" employee and Opal N. Row, is not disputed. It is argued that upon such being shown, a strong presumption arose in favor of the validity of the ceremonial marriage; that it must be further presumed that a prior marriage of either party to the latter marriage was terminated by divorce or death and that the burden rested upon claimant to show that her alleged common-law marriage to employee did not terminate in a divorce. Among the cases cited in support of said argument are Jones v. Jones, 63 Okl. 208, 164 P. 463, L.R.A. 1917E, 921, Templeton v. Jones et al., 127 Okl. 1, 259 P. 543, and Sam v. Sam et al., 172 Okl. 342, 45 P.2d 462.

■ The above mentioned presumptions are rebuttable. See Brokeshoulder v. Brokeshoulder et al., 84 Okl. 249, 204 P. 284, 34 A.L.R. 441. It follows that the basic issue posed in No. 39,252 is whether under the evidence such presumptions were overcome and the validity of the marriage asserted by claimant was established.

As to whether claimant and employee consummated a common-law marriage, the record shows that for some four years they lived together as husband and wife; that from August, 1954, on, claimant used and was known as Mrs. Row; that claimant introduced employee as her husband and employee introduced her as his wife; that from 1954 on, employee and claimant as husband and wife entered into rental contracts with others; that in 1957 employee addressed letters to claimant as Marie A. Row or Mrs. James W. Row; that in a 1957 application for employment employee stated that he was married; that in 1955 at the request of employee, transporting companies for which he worked issued "trip passes" to claimant in which she was referred to as employee's wife; that as aforesaid, an insurance policy was issued in which claimant was referred to as employee's wife and in which she was named employee's beneficiary. Claimant testified that the relationship between her and claimant from 1954 on was that of husband and wife.

■■ On the issue under consideration it is our province and duty to review the evidence and make an independent finding from the evidence. After having done so we are of the opinion and find that the evidence clearly shows that claimant and employee entered into a common-law marriage in 1954.

As to whether the evidence overcomes the presumption that the common-law marriage was terminated by divorce, the record shows this: At the time of employee's death he and claimant had been separated less than 10 months, during which period they were residents of Oklahoma. Claimant testified that she did not obtain a divorce from employee and that he did not obtain a divorce from her. Since they were both residents of Oklahoma, employee could only obtain a valid divorce by causing personal service of summons in a divorce action to be made on claimant. She received no service of summons. Thusly, claimant was in

a position to testify that employee had not obtained a divorce.

The record, being as stated, leads us to conclude that the evidence clearly overcomes the presumption that the common-law marriage in controversy was terminated by divorce.

Opal N. Row points to testimony of claimant to effect that she was not divorced from her prior husband until 1957. Using this as a premise she argues that claimant and employee could not have entered into a common-law marriage prior to date of the divorce in 1957. A copy of the decree granting claimant's prior husband a divorce was introduced in evidence. This shows that the decree was rendered and became final November 14, 1952. We note that claimant also testified that the decree was rendered in 1953. Under the evidence we conclude that the divorce decree was rendered on November 14, 1952. From the face of a second decree of divorce appearing in the record, claimant and the prior husband were apparently remarried on January 7, 1953, separated on July 25, 1953, and again finally divorced on February 26, 1954.

Opal N. Row makes the further argument that under the evidence the common-law marriage was consummated in Missouri; that under the statutory law of said State such marriages are not recognized and it appears that such was the law at all relevant times.

There is evidence that claimant and employee agreed to become husband and wife prior to their moving to Kansas City in 1954. In any event, they moved from Kansas City to Oklahoma in January, 1956, and thereafter remained in this State. There is an abundance of competent evidence showing that after returning to Oklahoma they openly assumed the relationship of husband and wife and each treated and considered the other as his or her spouse. This evidence suffices to show a common-law marriage. See Olinghouse v. Olinghouse, Okl. 265 P.2d 711.

In the last cited case the parties entered into a ceremonial marriage. At that time one of them was married to another person, which marriage was subsequently terminated by divorce. Thereafter the parties continued to live as husband and wife. It was held that such action on their part constituted a common-law marriage. The first portion of the first paragraph to the syllabus of the cited case reads thusly:

"The acts of living together and holding themselves out as husband and wife, after removal of a legal impediment to marriage, constitute a common-law marriage, even though both parties knew of the impediment. * * *"

Assuming that the common-law marriage was first consummated in Missouri where such marriages are not recognized, the evidence clearly shows a common-law marriage following claimant's and employee's return to Oklahoma.

For reasons stated, the appealed-from order of the Industrial Court is affirmed.

BLACKBIRD, C. J., HALLEY, V. C. J., and WILLIAMS and JACKSON, JJ., concur.

WELCH, DAVISON, JOHNSON and IRWIN, JJ., dissent.

WELCH, Justice (dissenting).

In this action the claimant seeks to recover a death benefit award under the Workmen's Compensation Law. As I read the law and the court decisions applying it, this claimant, (Marie A.) in order to prevail must establish two things: 1. That she was a dependent of the deceased at and prior to the time of his death, and –2– that she was related to him and was an heir at law of deceased.

In my view she has not established either one of these essential facts.

This is in fine a contest between two women, "Opal Norine" and "Marie A" as to which is and was the surviving widow and dependent of the deceased. When he died he was living with "Opal N" as his wife. They had been married by formal license and ceremonial marriage by a minister in

the usual manner five months before, all as shown by appropriate records, and during those five months this couple lived together as the ordinary married couple, the wife making and keeping the home and the husband earning the living and providing for her. All this is positively proven and no one disputes it.

After this man's death, when he could not appear and testify, and his widow "Opal Norine" being unaware of all details of past years, "Marie A" appeared as claimant, asserting an association with deceased over a period of three or four years which she contended ultimately became a living together as husband and wife until as she says they "separated" in September, 1957. And she had supporting witnesses who saw them while they lived together.

By her own testimony her association with deceased and/or her living with him began as pastime performance, when he was single, but she had a husband. At page 81 of the record she admitted it was a "shack job" between them. She did contend that thereafter, while living with deceased, she and her husband were divorced. But although there was ample time for it, she and deceased never married, just continued their joint dwelling until for some reasons which do not appear, she "separated" from him in September, 1957.

From the whole record I am convinced that she did not prove she ever was the wife of the deceased. Whatever was the relationship between "Marie A" and deceased it terminated when they "separated" in September, 1957. At that time she left him. She testified that she saw him again in December, 1957, on the Friday before Christmas when they visited together in a Chickasha Motel for the night. That episode she now labels as a "living together at that time as man and wife," though more realistic definitions might be applied to it. Anyway, whatever they did or did not do on that night of the holiday season one would hardly consider that as establishing a definite and legal matrimonial alliance, or even as resurrecting or renewing or revitalizing

any such an alliance which had theretofore flowered for a time then wilted away by her own act of termination (whatever the relationship was.)

The majority take this winter night episode as recreating or extending the relationship so as to conclude that they did not "separate" until December, 1957, but she makes it so clear in her testimony that she left him in September, 1957, that I think we should leave it that way without giving too much force and effect to the motel night in or near Chickasha,

I agree with the majority opinion that

"On the issue under consideration it is our province and duty to review the evidence and make an independent finding from the evidence."

In my review of the evidence I find much confusion and numerous discrepancies in the testimony of "Marie A" and her supporting witnesses. Entirely too much of that for me to find or to join in a finding that her case is strong enough to overcome the definite and real presumption in favor of ceremonial marriages, such as the one under which the decedent Row and his wife "Opal Norine Row" lived at the time of, and for five months prior to his death.

I cannot see in the evidence any sufficient showing that these parties became married when they first started living together, which was while she was undivorced from her former husband, Mr. Sunday, or that they became married when they moved to Missouri and lived there for two or three years, a state which does not recognize common law marriage at all, or that they became married when they moved back to Oklahoma a few months before she left him in September, 1957. Their being together in Oklahoma was merely a continuation of whatever their association had been before, not a common law marriage in Missouri, but merely a dwelling together, perhaps in harmony or good companionship, or I should say an acceptable companionship, but not a marriage. Both parties well knew the difference between marriage and non-marriage. Both had been married before and

by ceremonial marriage. They knew how to become married if they wanted to, and therefore it would follow that they knew how to remain unmarried if they wanted to, and this latter they did, as I view it.

I strongly favor and support and urge the presumption that goes with every ceremonial marriage, even after, or especially after, it lasts to the very day of the death of the husband, from the day of the ceremony to the date of his death.

There appears to have been no claim by "Marie A" that she was Row's wife from the time she "separated" from him in September, 1957, until he died in September, 1958, working to support his married wife "Opal N" risking and losing his life under circumstances that left a rich reward to be claimed and contested for.

The contentions against "Marie A" are not based upon any contention that she separated from Row "in December, 1957" as referred to in the majority opinion. She testified positively that she left him in September, 1957. Nothing at all occurred between them thereafter except a night together in a motel in December, 1957. Thus I find nothing in the record to support the statement that "until in December, 1957, employee (Row) and claimant (Marie A) lived together." She said she left him in September, 1957.

Nor do I find anything in the record to support the statement that "at time of separation employee made a promise to claimant to send her money, but failed to do so or otherwise support her." The most she said about this was when she testified at R 134 after she testified about telephone conversations with him in early 1958, she said, but without indicating when it was, that he offered to send her money if she needed it, but so far as the record shows she never did or never advised him she did, or tried to get money from him as his wife or otherwise.

Nor do I find any evidence that "Marie A" the claimant was a dependent of the deceased. She testified she "separated" from him in September, 1957, and that his last contribution to her of any kind was made when she later saw him in December, 1957, nor is it disclosed what kind or character of "contribution" he made to her on that winter night in the Motel room at Chickasha. So if deceased ever made any contribution to the support of "Marie A" all that had ceased in 1957, before he married "Opal" on the 15th day of April, 1958, and before he died on September 29, 1958. She specifically admitted that she had not been dependent on him in any manner since December, 1957, and it seems to me she has not been in any manner dependent on him since September, 1957, a year before he died in September, 1958.

Considering all of her testimony I cannot find either that she was the wife, or the dependent, of this man who died living with his ceremonially married wife Opal Norine.

I am well committed to this rule which I state as follows:

"When two single persons are joined together in ceremonial marriage and live together in such wedlock continuously until the husband is taken by death, the survivor is his widow, and when thereafter another woman appears, and for the definite and sole purpose of taking from such widow the substantial sum of money recoverable for the husband's death, she claims that in former years she and the husband associated together intimately and though never married, and though such associations were finally terminated by the other woman at least a number of months before the ceremonial marriage, yet she desires such associations to be accepted as a so-called common law marriage, to destroy the ceremonial marriage so that she may take all the money from the widow, such claim should not be looked upon with favor, and should be quickly disallowed unless it is supported by the most compelling circumstances and the most thoroughly convincing evidence to drive inescapably to the sustaining of such claim, and to not only fully justify, but to

compel that the judicial discretion and conscience be applied to a departure from the presumption of validity which accompanies and sustains all normal ceremonial marriages that endure unattacked until dissolved by death."

Application of that rule to this case would deny the right of "Marie A" as an after-thought to base this claim for cash on the circumstances here shown. It seems to me to be an after-thought because after she left Row she never claimed to be his wife until after he died and left this cash reward for his widow. Even after Row married Opal Norine, Marie A. never claimed she had been his wife until after he died and left this reward for his widow.

I am authorized to state that DAVISON, J., joins in these views.