197 So. 17

**BRIGGS v. TENNESSEE COAL, IRON & R. CO.**

**6 Div. 667.**

Supreme Court of Alabama.

June 6, 1940.

Rehearing Denied June 27, 1940.

Dan Trawick, Jr., and Clark & Trawick, all of Birmingham, for appellant.

Benners, Burr, McKamy & Forman, of Birmingham, for appellee.

BROWN, Justice.

The workman, Mose Briggs, an employee of the defendant, on the 16th day of Oc-

tober, 1939, was fatally injured in an accident arising out of and in the course of his employment. Both parties were at the time subject to and operating under the Workmen's Compensation Act. Code, 1923, §§ 7543–7552.

Eva Briggs, the wife of said workman, at the time of said injury was confined in the Bryce Insane Hospital as an indigent patient, and the circuit court finds as a fact that the workman ."had not contributed in any way to the support or maintenance of Eva Briggs since her admission in the Searcy Hospital, the Insane Hospital of the State of Alabama * * * to-wit, April 21, 1937."

The circuit court's conclusion of law, "That Eva Briggs was not a dependent of Mose Briggs entitled to compensation within the meaning of the Workmen's Compensation Act of Alabama," is supported by the statute, Code 1923, § 7552, as last amended, defining total dependency of wife as follows: "(a) Wife, unless it be shown that she was voluntarily living apart from her husband at the time of his injury or death, *or unless it be shown that the husband was not in any way contributing to her support and had not in any way contributed to her support for more than twelve months next preceding the occurrence of the injury causing his death."* [Italics supplied.] Gen.Acts 1936, Extra Session, p. 15, § 3.

The case is prosecuted by the next friend of the wife, who is *non compos mentis,* and the substance of the argument is that the statute should be liberally interpreted, resolving doubts in favor of liability to pay compensation, inasmuch as the clear purpose of the law is to shift to modern industry the burdens of such economic waste or loss caused to the workman and his dependents, as arise out of and in the course of the workman's employment, and when so construed the statute does not contemplate or intend to relieve the husband of his common law duty and moral obligation to support the wife in her afflictions, simply because she is an object of charity and is being supported at public expense.

■ This is an argument that should be addressed to the law making body of the State—the Legislature. Workmen's compensation laws are an innovation, are of statutory origin and, in many respects, are inconsistent with the common law. It was within legislative competence to define dependents and fix the liability of the employer in respect thereto. Chapman v. Railway Fuel Co., 212 Ala. 106, 101 So. 879.

■ Under the terms of the statute which fixes the liability contribution to the support of the alleged dependent, in some way, during the twelve months next preceding "the occurrence of the injury" was essential to such dependency. Act No. 29, Extra Session 1939, pp. 9, 15; Ex Parte Gude & Co. (Maddox v. Gude & Co.), 213 Ala. 584, 105 So. 657; Wilson v. Birmingham Electric Co., 219 Ala. 436, 122 So. 411; Gulf States Steel Co. v. Griffin, 214 Ala. 126, 106 So. 898.

In Harrison v. Cargill Commission Company, 126 Neb. 185, 252 N.W. 899, 901, cited by appellant, the court was dealing with the question as to whether or not the wife under the facts in that case was living with the husband at the time of his injury, and the holding was that the mere fact that she was confined, part time in an asylum, was not sufficient to destroy her dependency. The court observed: " 'Proof of total dependency is dispensed with under the statute where the husband and wife are "living together" at the time of the death of the injured employee. It seems, therefore, quite obvious that the Legislature intended by the use of the words to include all cases where there is no legal or actual severance of the marital relation, though there may be physical separation of the parties by time and distance. The "living together" contemplated by the statute, we think, was intended to cover cases where no break in the marriage relation existed, and therefore physical dwelling together is not necessary, in order to bring the parties within the words "living together." There must be a legal separation or an actual separation in the nature of an estrangement, else there is a "living together" within the meaning of the statute. This seems to be the reasonable and practical construction of the law, and the one which we think the Legislature intended. If the law should receive the construction that there must be physical dwelling together in order to satisfy the statute, it is plain that the purpose of the law would in many cases be defeated, because in many cases the spouse may be absent from home for long intervals, although there be no break in the marriage relation, no estrangement, and no intent to separate

or sever the existing relation or change the relations or obligations created by the marriage contract.' "

Affirmed.

GARDNER, C. J., and THOMAS and KNIGHT, JJ., concur.

On Rehearing.

PER CURIAM.

Application for rehearing overruled.

GARDNER, C. J., and THOMAS, BOULDIN, FOSTER, and KNIGHT, JJ., concur.