SINCLAIR OIL & GAS COMPANY, a
Corporation, Petitioner,

v.

STATE INDUSTRIAL COMMISSION and
W. B. Edwards, Administrator of the Es-
tate of Jess W. Jackson, Deceased, Dora
Mae Jackson and Corinne Jackson, Re-
spondents.

No. 38243.

Supreme Court of Oklahoma.

Feb. 10, 1959.

Rehearing Denied April 7, 1959.

Application for Leave to File Second Peti-
tion for Rehearing Denied May 5, 1959.

Angus A. Davidson, Ted D. Foster, Jr., Thomas E. Douglass, Tulsa, for petitioner.

Frank Seay, Seminole, Mac Q. Williamson, Atty. Gen., for respondents.

WILLIAMS, Vice Chief Justice.

On January 8, 1958, while in the employ of Sinclair Oil and Gas Company, Jess W. Jackson sustained an injury resulting in death. W. B. Edwards was appointed administrator of his estate and thereafter was substituted as claimant for compensation against Sinclair Oil and Gas Company, referred to as petitioner herein, under the death benefit provisions of the Workmen's Compensation Law, 85 O.S.1951 § 1 et seq., in behalf of Corinne Jackson, the decedent's surviving widow, and/or Dora Mae Jackson, who claimed to be the common-law wife of deceased.

At the hearing of the case it developed that deceased at the time of his death had a former wife living from whom he had not obtained a divorce. In the claim it is stated that on January 8, 1958, Jess W. Jackson, while in the employ of Sinclair Oil and Gas Company, sustained an accidental injury resulting in his death; that the injury occurred when he was run over by a truck or pulling unit then being operated by petitioner.

Petitioner in its answer denied liability on the ground that the injury sustained by deceased did not constitute an accidental injury, did not arise out of and in the course of his employment, and specifically alleged that the death of deceased, Jess W. Jackson, was brought about by his willful intention to bring injury or death to himself and that no dependent heir at law existed at the time of deceased's death.

The trial judge, at the close of the evidence, after finding that on January 8, 1958, Jess W. Jackson, while in the employ of petitioner, sustained an accidental injury, arising out of and in the course of his employment, consisting of a crushed skull, when he was run over by a large truck or pulling unit belonging to the respondent, which resulted in his death, and that deceased left surviving him as his only dependent heir his wife, Corinne Jackson, further found:

"That W. B. Edwards has been appointed administrator of the estate of said deceased, Jess W. Jackson, since the filing of this claim, and he is therefore the proper party to this action as claimant, and he is hereby substituted as party claimant.

"That the respondent has set up and pled an affirmative defense, to-wit: That the death of Jess W. Jackson was brought about by his willful intention to bring death to himself. The trial judge specifically finds that this defense is not supported by the evidence.

"That the parties claimant through their counsel of record have stipulated and agreed that any Award herein should be disbursed, divided and paid out under the order and direction of the County Court of Seminole County, Oklahoma, a Court having jurisdiction over the estate of said deceased, Jess W. Jackson. Said stipulation and agreement is hereby approved and the proceeds of this Award shall be paid to W. B. Edwards, administrator of the Estate of Jess W. Jackson, deceased. The same to be divided and disbursed under the orders and directions of the County Court of Seminole County, Oklahoma.

"That by reason of the accidental injury and resulting death of Jess W.

Jackson, W. B. Edwards, as administrator of the estate of Jess W. Jackson, deceased, for the use and benefit of the dependent heirs is entitled to recover from the respondent the sum of $13,-500.00 less the sum of $2,700.00 attorney fee representing 20% of the Award for regular and extraordinary services rendered."

The trial judge, upon such findings, entered an award in favor of the administrator as claimant, on behalf of decedent's estate, in the sum of $13,500.

Petitioner brings the case here to review this award and contends that it is not sustained by the evidence and is contrary to law. The evidence discloses that deceased, Jess W. Jackson, resided near Maud in Seminole County, Oklahoma. He was employed by petitioner Sinclair Oil and Gas Company as a general oil field laborer or roustabout and had been so employed by petitioner for thirty years. At the time of his death he was a member of a crew of four that operated a well servicing unit. The unit consisted of a large tandem truck on the bed of which was mounted heavy power driven machinery which was used in servicing producing oil wells. On the date of his death Jackson reported at the tool house for work as usual. After receiving his job assignment he got into the back seat of the truck or pulling unit, sat next to the door and rode for approximately one eighth or quarter of a mile with the door open. Mr. Delo last saw Mr. Jackson alive in the doorway leading into the engine house. One of the employees of petitioner who was in the engine house testified that he last saw Mr. Jackson alive, leaning against the wall of the belt hall. Mr. Delo then left the truck on the left side thereof, walked around in front of the truck and back to the rear along the right hand side, moved his equipment on the rig floor and returned to and re-entered the cab of the truck and then proceeded to move the truck in low gear at the lowest speed possible. Upon making a left-hand turn Mr. Delo saw Mr. Jackson lying on the ground. The right rear wheel of the truck had passed over his head. There were no eye witnesses to the accident.

The accident was investigated by an employee of the petitioner who was connected with the safety department of petitioner, and several other employees of petitioner on the day after the accident occurred, and by Mr. Stege, member of the Police Department of the City of Tulsa, and John M. Sowers, Safety Engineer for the Department of Labor of the State of Oklahoma, and by W. M. Nicholson, Sheriff of Seminole County, Oklahoma, on the 17th day of January, 1958.

The deceased left surviving him his wife, Corinne Jackson, and two adult daughters. The adult daughters are both married and are not parties to this litigation and do not make any claim by reason of the death of their father. The surviving spouse, Corinne Jackson, has for the past ten years been confined in Central State Hospital at Norman, Oklahoma, as a mental patient at public expense.

Mr. Sowers testified that he is Safety Engineer for the Department of Labor of the State of Oklahoma; that after the death of Jess W. Jackson he made an investigation of the accident; that on such date he found on the west side of the building in the area in which Mr. Jackson died a small piece of tin sticking out of the ground where Mr. Jackson could have tripped his toe on it; that in his opinion Mr. Jackson could have caught his toe on the piece of tin that was in the ground and fallen under the truck or could have fainted, or anything.

On cross-examination the witness was presented with certain pictures, which the evidence shows were taken about one hour after the accident, and was asked to examine the pictures and see if he could locate the piece of tin. The witness made a circle on the photograph at the point at which he said the tin was located, but testified that the piece of tin did not show on the photograph; that grass and vegetation had grown over the piece of tin and for this

reason probably did not show in the photograph.

Mr. Nicholson, Sheriff of Seminole County, testified that on the evening of January 17th he went to the scene of the accident to make an inspection and investigation of the premises in order to ascertain and determine the cause of the accident. At that time he did not see or discover any tin or other object buried in the ground near the place where the accident occurred. He, however, returned several days later and after making further investigation he did discover the piece of tin buried in the ground near the place where the accident occurred; that the piece of tin was covered with grass and vegetation in such manner as not to be easily seen or discovered.

Several employees of petitioner testified that they made an investigation and examination of the premises where the accident occurred, next day after it occurred, for the purpose of ascertaining whether or not there were any obstructions or debris on the premises near the scene of the accident which could have caused the accident. None of these employees saw or discovered the piece of tin testified to by the other witnesses nor did they see or discover any other obstruction which could have caused the accident. One of these employees, however, testified that several days thereafter he again returned to make further investigation and at that time did discover the piece of tin, testified to by the other witnesses, buried in the ground.

It is the theory of claimant that deceased probably came to his death when he tripped over the piece of tin buried in the ground and fell under the wheel of the truck and contends that the evidence offered by him is sufficient to make out a prima facie case of accidental injury.

Petitioner in support of its defense of suicide offered evidence of several of its employees who testified that prior to December, 1957, deceased was a very jolly sort of a person; that he was a good mixer, had a good personality and was full of fun and always joking; that subsequent to that date his disposition seemed to change; that he kept aloof from other employees, did not speak to them unless first spoken to; that he seemed to be despondent; that he, however, kept on working as usual and did his work well.

Mr. Delo, who was the driver of the truck or pulling unit, testified substantially as did the other employees and in addition thereto testified that on January 4, 1958, he went down to Sasakwa to change the pump on a well; that Mr. Jackson and two other employees of petitioner went with him; that during the course of work on the well it was necessary to move the pulling unit; that Jackson went out ahead of the unit and took the link to hook up a chain; that a third employee of petitioner was standing outside the cab directing Mr. Delo, who was driving the vehicle; that he was driving slow; that he waved to him to move faster; that while so moving the unit he missed Mr. Jackson so he stopped the truck and got out and went around the unit and there saw Mr. Jackson on his knees in front of the bumper of the truck; that this transpired on Saturday, January 4th, four days before Mr. Jackson was killed. He further testified that on the 8th day of January, after he discovered Jackson lying on the ground, he went back and found him dead. His hands were lying down to his sides, his legs were not perfectly straight but were practically together, his head was facing the south, his glasses and gloves were lying close to his body.

Mr. Stege, member of the Tulsa Police Department, testified that he is a graduate of the National Police Academy, which is accredited by the Federal Bureau of Investigation, and that he has been a member of the Tulsa Police Department continuously since May 5, 1930; that he had been assigned to the Detective Bureau since 1940, and that his duties have been concerned mostly with the investigation of major problems; that during 1957 he investigated six suicides and twenty-eight attempted suicides in Tulsa County; that since 1948 he had personally investigated or supervised the investigation of fifty or more suicides; that at the request of petitioner he made

an investigation of the death of Mr. Jackson and in response to a hypothetical question propounded by counsel for petitioner, including the evidence adduced by petitioner on its theory of the case, the witness expressed the opinion that Mr. Jackson deliberately got down and put his head under the wheel with the intention of having it run over him.

Dr. A. testified that he has Bachelor of Arts, Master of Science and Doctor of Philosophy degrees, with a specialization of Clinical Psychology; that he had taught at the University of Oklahoma for one year on the subject of clinical psychology and worked in the psychological clinic and was employed as a psychologist for the Veterans' Administration; that he is employed as a psychologist for the Tulsa County Juvenile Court, and is in private practice; that while he took his internship he worked for a year in the Suicide-Homicide ward; that he deals almost daily with the question of suicide and, in answer to the same hypothetical question propounded to Mr. Stege, he expressed an opinion that it was not only possible but fairly probable that Mr. Jackson committed suicide on January 8, 1958. The above hypothetical questions were propounded and answered by the witnesses without any objection being made on behalf of claimant.

Dr. J. in rebuttal testified on behalf of claimant as follows: that he was a licensed medical practitioner; that he had known people who had committed suicide; that he gave mental and physical examinations of such persons. The doctor in answer to a hypothetical question propounded by counsel for claimant based on the evidence adduced to support his theory of the case expressed his opinion that deceased had caught his toe under the piece of tin and had fallen under the wheels of the truck; that in his opinion it did not seem reasonable or logical that he would have committed suicide unless he was insane. The doctor was permitted to answer this hypothetical question without objection by counsel for petitioner.

This, in substance, constitutes the evidence in the case. Counsel for petitioner contend that the evidence offered by it clearly establishes that deceased's death was caused by suicide rather than as the result of an accidental injury and the Commission therefore erred in awarding compensation. We do not agree.

█ There is a presumption against suicide in cases of this character. 85 O.S. 1951 § 27 provides:

"In any proceeding for the enforcement of a claim for compensation under this act, it shall be presumed in the absence of substantial evidence to the contrary: * * *

"3. That the injury was not occasioned by the wilful intention of the injured employee to bring about the injury of himself or of another."

In Prudential Ins. Co. of America v. Tidwell, 163 Okl. 39, 21 P.2d 28, we held:

"In determining whether or not an insurance company is liable under an insurance policy providing for benefits under a clause specifying liability in case of accident by 'external, violent, and accidental means,' where it is admitted that the means producing death was 'external and violent,' it will be presumed, in the absence of evidence to the contrary, that such means was also accidental."

See, also, Metropolitan Life Ins. Co. v. Plunkett, 109 Okl. 148, 234 P. 722; Penn Mut. Life Ins. Co. v. Spaulding, 50 Okl. 307, 150 P. 494.

Petitioner concedes that there is a presumption against suicide but contends that the evidence offered by it is sufficient to overcome such presumption and clearly establishes that deceased's death was caused by suicide and not by accident and that the Commission therefore erred in awarding compensation. We do not agree. While petitioner offered evidence tending to support its theory and defense of suicide we think the evidence, when taken and considered as a whole, is such that reasonable

minds may differ as to whether deceased's death was accidental or suicidal and presents a question for the determination of the Commission. In Metropolitan Life Ins. Co. v. Plunkett, 129 Okl. 292, 264 P. 827, this court held:

"In an action on a life insurance policy, void on suicide of the insured, sane or insane, where the evidence is such that the minds of reasonable men might differ as to whether death was accidental or suicidal, held, the issue whether insured committed suicide was for the jury."

■ We conclude that the evidence is sufficient to sustain the finding of the Commission that the injury sustained by deceased constituted an accidental injury and that it arose out of and in the course of his employment.

■ Petitioner further contends that the widow, Corinne Jackson, suffered no pecuniary loss as the result of the death of deceased, was not a dependent and therefore is not entitled to compensation. The record discloses that at the time of deceased's death and for ten years prior thereto Corinne Jackson, under order of the County Court of Seminole County, Oklahoma, was confined in a mental institution as a public patient at Norman, Oklahoma, at public expense.

The Workmen's Compensation Act, Title 85 O.S.1951 § 3.1 defines the term "dependent" as meaning and including the heirs at law of the deceased as defined by the descent and distribution statutes of Oklahoma. Under our holding in Capitol Steel & Iron Co. v. Fuller, 206 Okl. 638, 245 P.2d 1134, the widow in order to recover compensation under the Death Benefit Provisions of the Workmen's Compensation Law must establish that she is an heir at law and dependent upon deceased for support.

As far as we have been able to ascertain this court has never passed upon this question raised by petitioner.

In 58 Am.Jur. Workmen's Compensation Section 185, it is said:

"Whether or not the status of a person as a dependent of a deceased workman is affected by the fact of his residence or confinement in a public institution, or by his being the recipient of public support in some other manner, depends upon the provisions of the statute and upon the circumstances of the particular case. * * *"

Petitioner in support of its contention relies upon Roberts v. Whaley, 192 Mich. 133, 158 N.W. 209, L.R.A.1918A, 189; Holden v. Public Service Electric & Gas Co. (New Jersey Department of Labor—Workmen's Compensation Bureau) 16 N.J.Misc. 152, 197 A. 426; Briggs v. Tennessee Coal, Iron & R. Co., 240 Ala. 44, 197 So. 17. In the Briggs case, supra, the court held where deceased employee had not contributed to the support and maintenance of his insane wife for more than two years prior to his death as result of injuries sustained in an accident arising out of and in the course of his employment, no recovery could be had by wife under the compensation act, though the wife was an indigent patient in insane hospital and an object of charity. To the same effect are the other cases cited by petitioner.

In each of the above cases it appears that the wife of deceased was confined in a mental hospital at public expense at the time of her husband's death and for a long time prior thereto and that the husband had at no time during said period of time made any contribution toward her support and compensation in these cases was denied upon that theory. We do not consider these cases strictly in point because of specific statutory provisions of these states.

■ In this case it appears from the testimony of Dora Mae Jackson that deceased did make contributions for the support of his wife while in the mental institution at Norman; that such contributions consisted of clothing and cash. She did not know the amount but testified that such contributions were frequently and regularly

made. We may infer from this testimony that the contributions made by deceased were substantial. It was not essential that claimant, Corinne Jackson, be entirely dependent upon deceased for support in order to be entitled to compensation. It was sufficient that she may have been only partially so dependent and that contributions made by deceased were substantial. Pawhuska Feed Mills v. Hill, Okl., 289 P.2d 671; Cimarron Telephone Co. v. Nance, 208 Okl. 622, 255 P.2d 931; G. I. Const. Co. v. Osborn, 208 Okl. 554, 257 P.2d 1056.

We conclude the evidence is sufficient to sustain the finding of the Commission that Corinne Jackson was the sole dependent surviving heir of deceased and ruled correctly in awarding compensation to decedent's estate for her benefit.

The Commission directed that the award entered be paid to W. B. Edwards, administrator of the estate of Jess W. Jackson, deceased, the same to be divided and distributed under the order and direction of the County Court of Seminole County, Oklahoma.

Petitioner challenges the correctness of this order. We think the challenge well taken. The award is not an asset of the estate of Jess W. Jackson, deceased. Aetna Casualty & Surety Co. v. Young, 107 Okl. 151, 231 P. 261; Tackett v. Tackett, 174 Okl. 51, 50 P.2d 293. The County Court of Seminole County has no jurisdiction over the award.

It is, of course, necessary before the award can be paid that a guardian for the estate of Corinne Jackson, an insane person, be appointed.

The Commission should have ordered that the award be paid to W. B. Edwards, administrator of the estate of Jess W. Jackson, deceased, and distributed to the guardian of Corinne Jackson for the use and benefit of said Corinne Jackson, sole dependent heir of Jess W. Jackson, deceased.

The award of the Commission is modified to so provide and as so modified is sustained.