INDIAN OIL TOOL COMPANY and Hartford Accident and Indemnity Company, Petitioners,

v.

Dennie Ellen THOMPSON and the State Industrial Court of the State of Oklahoma, Respondents.

No. 40790.

Supreme Court of Oklahoma.

June 8, 1965.

Rehearing Denied Aug. 3, 1965.

Fenton, Fenton, Smith & McCaleb, Oklahoma City, for petitioners.

Childers & Keller, Oklahoma City, Herbert Hope, Pauls Valley, for respondents.

DAVISON, Justice.

On November 7, 1963, the State Industrial Court affirmed the order and findings of the trial judge which read:

"On March 31, 1962, Lawrence B. Thompson was in the employ of respondent, engaged in a hazardous occupation within the meaning of the Workmen's Compensation Law, and on said date sustained an accidental injury, consisting of a heart attack, arising out of and in the course of his employment and resulting in his death on April 4, 1962.

"That no administration proceedings have been instituted in the estate of Lawrence B. Thompson. That Lawrence B. Thompson left surviving him, his widow, Dennie Ellen Thomp-

son, as the sole and only surviving heir at law.

"That by reason of the accidental injury and resulting death of Lawrence B. Thompson, his widow, is entitled to recover from respondent or insurance carrier the sum of $13,500.00 less attorney fee, $2275.00, balance due claimant $11,225.00."

Petitioners, Indian Oil Tool Company and Hartford Accident and Indemnity Company, contend that the award under review here should be vacated, as (1) The State Industrial Court was without jurisdiction to enter an award for the reason that the claim was brought by other than the personal representative of the deceased workman's estate, and (2) the evidence was insufficient to support the findings that the deceased workman sustained an accidental personal injury causing his death.

Petitioners' first proposition is that the State Industrial Court was without jurisdiction to enter an award for the reason that the claim was not filed by the administratrix of the deceased workman's estate, but by his widow. In this connection we note that the claim filed by the surviving widow alleged that no administrator or executor had been appointed. In the trial proceedings the widow answered a question during her cross-examination to the effect that she had been appointed administratrix of her deceased husband's estate. The petitioners here say it is necessary for a widow or next of kin claimant to prove, as well as allege, that no personal representative has been appointed in order for a claim for death benefits by other than the personal representative of the deceased to be validly made. 12 O.S.1961, Sec. 1054. We have so held in several decisions. See E. G. Nicholas Const. Co. v. State Ind. Com., 207 Okl. 428, 250 P.2d 221.

However, in Willis v. Capitol Well Servicing Co., Okl., 285 P.2d 388, it was recognized that the Death Benefits Act, passed in 1951, modified 12 O.S.1951, Secs. 1053, 1054 to the extent that a claimant proceeds in a

representative capacity for the use and benefit of persons who have suffered a pecuniary loss by the death of the deceased workman; that since the administrator claimant, or if no administrator had been appointed, the widow claimant, brings the proceedings in a purely representative capacity for the use and benefit of persons who have suffered a pecuniary loss, the objection that there is a misjoinder of parties must be raised in some proper manner before trial, or same will be waived.

Also in Woods County v. Tucker, Okl., 312 P.2d 452, wherein the deceased's widow and the administrator of his estate were claimants, no fatal defect was seen as by virtue of statute each of them appeared in a representative capacity for the use and benefit of the dependents of the deceased. Under the circumstances there an amendment of the order and award was deemed to be all that was necessary.

If the matter under review had initially been instituted by claim filed by the administratrix for the use and benefit of the dependent widow and next of kin the issues between such and the petitioners here would not have been different, for claim in this type of proceeding, under statute, comes to the administratrix, not as a survival from her intestate, but as an obligation springing into existence after the death of her intestate, which is in a sense a trust in her hands to be executed wholly for the benefit of the dependent next of kin, rather than for the benefit of the decedent's estate. The administratrix is selected merely as a convenient instrumentality for the collection of the benefits provided by law for the deceased workman's next of kin. If an administratrix has been appointed she acts nominally in the capacity that the widow of the deceased would have acted in an action for wrongful death under 12 O.S. 1961, Secs. 1053, 1054. We pointed out in Sinclair Oil & Gas Co. v. State Industrial Commission, Okl., 338 P.2d 866, that an award for death benefits is not an asset of the estate of the deceased workman.

While the administratrix was the proper party to institute the claim had she been so appointed at the time the claim was filed, and if not at that time, subsequently before the determination of the proceeding by substitution or by amendment, still, under the circumstances here involved the defect of failure to amend after the widow had been appointed administratrix was more technical than an actual defect, for as has heretofore been stated, whether recovery be sought for the dependent named by statute as represented by the administratrix or as represented by the widow, petitioners' position is the same. Where there is only one cause of action there is but one liability, and under the circumstances here, the defense of estoppel by judgment would surely be available to petitioners against the widow as dependent of the deceased workman, in either capacity.

Petitioners' other contention: That the evidence was insufficient to support the findings that the deceased workman sustained an accidental personal injury causing his death, hinges on Dr. S' answer to a hypothetical question which called for an assumption that upon the workman's return from work March 31st, after performance of labors of a strenuous nature to which he was unaccustomed, he was weak and ill, had poor color, suffered pain and a tight feeling in his chest. Dr. S testified that, in his opinion, the workman had suffered a heart attack from unusual exertion which aggravated some underlying arteriosclerosis precipitating a coronary thrombosis which caused his death three days later.

Petitioners urge that this expert opinion depended upon (a) an assumption that the workman was doing strenuous work to which he was unaccustomed, for which there was no competent evidence, and (b) upon hearsay testimony that a tight feeling in his chest, accompanied by pain said by Dr. S to be essential to a medical conclusion that the workman died of a heart attack, had been felt by the workman.

Our examination of the record reveals competent evidence that the workman was on March 31st doing strenuous work to which he was unaccustomed. Witness Wayne Palmer testified that on March 31st he was working as a welder's helper with the deceased who was the welder; that on this particular day witness and deceased were cutting a hole five feet by five feet in a piece of concrete about thirty feet by sixty feet, the concrete being about three feet thick; that witness was operating the drill and deceased was applying weight to the drill; that witness and deceased were both tired after drilling the concrete for six hours before they quit for the day; that the work witness did on this particular day was the type of work that he was usually engaged in but that he had never before seen the deceased do any concrete drilling. This witness further testified that to his knowledge deceased had not been accustomed to doing this sort of strenuous work for at least a month or more. This testimony was in conflict with the employer who testified that the deceased had done the same type of work previously. Although the testimony was in part conflicting, there was competent evidence to support the hypothetical question which called for an assumption by the medical expert that on the above date the deceased had performed physical labor to which he was unaccustomed.

■ The contention is made that claimant's testimony that the deceased stated upon arriving home March 31st that he had a tight feeling in his chest was hearsay and should have been excluded. Also that if it had been excluded the conclusion expressed by the physician witness in answer to the hypothetical question which assumed that the deceased stated he had a tight feeling in his chest would have been without probative force. We are reminded of the conclusions reached, and authorities considered, in Southwestern Bell Telephone Company v. Nelson, Okl., 384 P.2d 914, as to hearsay and res gestae, wherein we said that where the concerned statement was

merely a narrative of past happenings, deliberate rather than spontaneous, and made under circumstances where the mind was not controlled by shock or excitement, it was not admissible as res gestae, citing Wray v. Garrett, 185 Okl. 138, 90 P.2d 1050. The identifying characteristics of res gestae, "spontaneous" and "instinctive," have been applied and utilized as to involuntary expressions of pain as an exception to the hearsay rule. In Collins-Dietz-Morris Co. v. Richardson, Okl., 307 P.2d 159, we held that where the bodily or normal feelings of a person are to be proved, the usual and natural expressions and exclamations of such person which are the spontaneous manifestations of pain, and naturally flow from the pain being suffered at the time, are competent and originally evidence, which may be testified to by any party in whose presence they were uttered. See also, to like effect, Lee v. Swyden, Okl., 319 P.2d 1009.

 Petitioners' conclusion that the statement of the deceased that he had had a hard day and he felt a tightness in his chest was a narrative of a past occurrence, obviously correct as to his having had a hard day, is not necessarily so of the second part of such sentence. This latter statement is based upon the testimony of Mrs. Thompson, the wife of the deceased. She testified that on the day in question, March 31st, the deceased came home at about six o'clock in the evening; that a Mr. Jones (company employee) with whom he rode to work that morning in a pickup brought him home; that witness saw deceased get out of the pickup which was some thirty feet from their house. This witness further testified as follows:

Q. Now when Mr. Thompson got out of the pickup what was the first thing that he did?

A. Well, he leaned against the pickup when he first got out.

Q. Describe to the court exactly how Mr. Thompson looked to you when he got out of the pickup?

A. He was very gray and pale looking.

Q. He he ever looked pale or gray before this date when he came home from work?

A. No, sir.

* * * * * *

Q. How long did he lean against the pickup?

A. Oh, just for a few minutes.

Q. Then what did he do?

A. Came on in the house and leaned against the door, when he came in.

Q. Now, before you said anything to him or anyone else said anything to him, did Mr. Thompson say anything to you while he was leaning against the door?

A. Yes.

Q. What did he say?

* * * * * *

A. He said he had a very hard day and he had a tight feeling in his chest. Said he had a tight feeling in his chest.

Mrs. Thompson further testified:

Q. When he got out of the pickup, did he breathe normally?

A. No, sir.

Q. How did he breathe when he got out of the pickup?

A. Very heavy.

Q. How did you know he was breathing heavy?

A. Because he opened his mouth like he was having a hard time getting his breath.

Q. Will you show the court the way he was doing when he was having a hard time breathing?

A. He opened his mouth real wide. He had a hard time getting his breath.

That he felt a tightness in his chest appears, in fact, to pertain to his feeling at the moment of the utterance of the statement. Whether such was evoked by unusual sensory feeling in the chest, pain at the moment, expressed under continuance

of shock, resulting in spontaneity of expression, cannot be as observable by this court as to the trial tribunal which had opportunity to observe the demeanor of the witness and hear tonal inflections and emphasis copied by the witness in testifying of the utterance by the deceased, or note the absence thereof. The record is not refutative of indication of shock. We note that the trial court apparently considered the deceased's utterance as a spontaneous manifestation of a bodily condition made while under shock, as evidenced by its ruling on objections. We should not, under the circumstances, assume error of the trial court. We are mindful of the rule stated in Huffman v. Gaylor, Okl., 267 P.2d 564, that the question of admissibility of statements as a part of the res gestae is largely determined by the facts and circumstances of each case, and should in a great measure be left to the determination of the trial court.

The witness further testified that deceased went to bed around 7 or 7:30 contrary to his usual routine of retiring around 9 or 9:30 after reading the paper. That on the following day, Sunday, he ate but little and slept mostly; his difficulty in breathing persisted. On Monday he had difficulty lacing his boots and complained of chest pain. His face was pale and "kinda drawn looking." He went to work without eating his breakfast and upon returning at the close of the day ate only a little soup and retired about 7:30. During the night his breathing was heavy and unnatural. Tuesday was a repetition of Monday except for the suffering of additional pain by deceased. In the evening he complained of additional pain and of hurting in his left arm and kept opening and shutting his left hand. On Wednesday his breakfast consisted of oats, toast and coffee; his face was very gray and wrinkled. His death occurred that day. The duties he performed on Wednesday, the day of his death, were of a routine nature, as were those performed the two previous days. On Wednesday, after he had finished a routine task he went to his car to lie down; he answered affirmatively an inquiry as to whether he'd like to be taken home. On the way home he became more ill, waved his hands around, clasped his chest and slipped to the floor of the pickup, and died.

Under the circumstances shown, the finding of the State Industrial Court that the opinion of Dr. S as to causation was based upon facts he assumed, which assumption was supported by competent evidence.

The order of the State Industrial Court should be, and it is hereby ordered, amended to show the claimant widow as administratrix of the estate of the deceased, and as so amended, the award is sustained.

JACKSON, V. C. J., and WILLIAMS, BLACKBIRD, IRWIN, BERRY and HODGES, JJ., concur.

HALLEY, C. J., concurs in part and dissents in part.